**2024-1346**

# United States Court of Appeals
# for the Federal Circuit

CORCEPT THERAPEUTICS, INC.,

*Plaintiff-Appellant,*

— v. —

TEVA PHARMACEUTICALS USA, INC.,

*Defendant-Appellee.*

*On Appeal form the United States District Court
for the District of New Jersey in No. 1:18-cv-03632-RMB-LDW,
Honorable Renée Marie Bumb, Chief Judge*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

F. DOMINIC CERRITO
ERIC STOPS
EVANGELINE SHIH
BRIAN C. CANNON
WILLIAM B. ADAMS
DANIEL C. WIESNER
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Counsel for Plaintiff-Appellant
Corcept Therapeutics, Inc*

May 28, 2024



FORM 9. Certificate of Interest                                    Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1346

**Short Case Caption** Corcept Therapeutics, Inc. v. Teva Pharmaceuticals USA, Inc.

**Filing Party/Entity** Corcept Therapeutics, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/28/2024

Signature: /s/ Eric C. Stops

Name: Eric C. Stops

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Corcept Therapeutics, Inc. | | BlackRock, Inc. (10% or more stock owner) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| John P. Galanek<br>Quinn Emanuel Urquhart & Sullivan, LLP | William C. Baton<br>Saul Ewing LLP | |
| Nicholas A. LoCastro<br>Quinn Emanuel Urquhart & Sullivan, LLP | Sarah A. Sullivan<br>Saul Ewing LLP | |
| Charles M. Lizza<br>Saul Ewing LLP | Alexander L. Callo<br>Saul Ewing LLP | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)     ☐   No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................vi

TABLE OF AUTHORITIES ................................................................ viii

INTRODUCTION .................................................................................1

ARGUMENT .........................................................................................4

I.     TEVA CANNOT DEFEND THE DISTRICT COURT'S DIRECT
INFRINGEMENT RULING ..........................................................4

     A.     The District Court Erred In Failing To Start With The ANDA............4

          1.     Where The ANDA Answers The Direct Infringement
Question, The ANDA Controls ...................................................5

          2.     Even Where The ANDA Does Not Answer The Direct
Infringement Question, The ANDA Remains the Starting
Point .........................................................................................8

     B.     The District Court Erred In Looking Beyond Teva's ANDA.............10

          1.     The District Court's Findings Establish That Teva's
ANDA Answers The Direct Infringement Question ...............10

          2.     Outside Evidence Cannot Override the ANDA .......................12

          3.     Method Patents Should Not Be Treated Differently.................13

          4.     *Vanda* Does Not Require Evidence of Physician Practice .......15

     C.     Even If Teva's ANDA Label Alone Were Not Sufficient To
Prove Direct Infringement, the Extrinsic Evidence Together
With The ANDA Label Is More Than Sufficient ...............................17

II.    TEVA CANNOT DEFEND THE DISTRICT COURT'S INDUCED
INFRINGEMENT RULING ........................................................20

     A.     Teva Cannot Defend The District Court's Opinion ............................21

          1.     *HZNP* Is Inapposite...................................................................21

2.    Warnings Do Not Defeat Inducement ......................................26

3.    The Existence Of Non-Infringing Alternatives Is
      Irrelevant ......................................................................................28

B.    Teva Cannot Defend the District Court's Error Regarding
      Claim 6 of the '800 Patent ..................................................................30

CONCLUSION .......................................................................................................31

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott Labs. v. TorPharm.*,
300 F.3d 1367 (Fed. Cir. 2002) ............................................................9

*AstraZeneca LP v. Apotex Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) ......................................................18, 19, 25, 29

*Bayer AG v. Elan Pharmaceutical Research Corp.*,
212 F.3d 1241 (Fed. Cir. 2000) ........................................................7, 8

*Braintree Labs. v. Breckenridge*,
688 F. App'x 905 (Fed. Cir. 2017) ....................................................22

*In re Brimonidine Patent Litigation*,
643 F.3d 1366 (Fed. Cir. 2011) ......................................................6, 16

*Ferring B.V. v. Watson Labs.*,
764 F.3d 1401 (Fed. Cir. 2014) ....................................................9, 14, 16

*Genentech, Inc. v. Sandoz Inc.*,
55 F.4th 1368 (Fed. Cir. 2022) ..................................................*passim*

*Glaxo v. Novopharm*,
110 F.3d 1562 (Fed. Cir. 1997) ..........................................................8

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*,
7 F.4th 1320 (Fed. Cir. 2021) ..............................................21, 22, 23

*H. Lundbeck v. Lupin Ltd.*,
87 F.3d 1361 (Fed. Cir. 2023) ......................................................22, 25

*HZNP Medicines Inc. v. Actavis Labs. UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019) ........................................21, 22, 24, 29

*Par Pharm. v. Eagle Pharms.*,
44 F.4th 1379 (Fed. Cir. 2022) ........................................................7, 8

*Sandoz Inc. v. Amgen Inc.*,
    773 F.3d 1274 (Fed. Cir. 2014) .............................................................2

*Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*,
    731 F.3d 1271 (Fed. Cir. 2013) ...................................................*passim*

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
    PGR2019-00048, 2020 WL 6809812 (P.T.A.B. Nov. 18, 2020) ...............17, 18

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
    18 F.4th 1377 (Fed. Cir. 2021) ....................................................1, 25

*Vanda Pharms., Inc. v. West-Ward Pharms. Int'l Inc.*,
    887 F.3d 1117 (Fed. Cir. 2018) ...................................................*passim*

## INTRODUCTION

Teva cannot defend the district's court's legally erroneous infringement analysis. As the district court found, in 2019, less than a year before the close of fact discovery, the FDA updated the Korlym® label "based on th[e] breakthrough" inventions reflected in the patents-in-suit. Teva does not dispute that it then copied the 2019 Korlym® label verbatim. This is not a case where Teva seeks to carve out the infringing use. Nor is this a case where the instructions in the label are unclear— there is no dispute the dosage instructions in Teva's ANDA Label exactly match the patented method steps and thus infringe Corcept's '214 and '800 patents.

In PTAB proceedings and the invalidity appeal before this Court, Teva urged that it would have been obvious to coadminister mifepristone with a strong CYP3A inhibitor to sick patients because—as the FDA stated—there was a "high potential" of concomitant use. Appx807. But as this Court recognized, until Dr. Belanoff and Corcept performed the clinical trials and established the patented methods of treatment, there was no reasonable expectation of success. *Teva v. Corcept*, 18 F.4th 1377 (Fed. Cir. 2021). In this infringement appeal, however, Teva switches positions and argues that, even after the addition of specific dosing instructions to the FDA approved label, dual therapy will never occur, relegating to a footnote the fact that it previously argued the opposite. Teva's newfound arguments lack merit.

## Direct Infringement

Contrary to Teva's position (Br. at 29), it is well-settled that in Hatch-Waxman cases asserting method of treatment patents, the accused ANDA Label must serve as the initial and primary source of evidence for direct infringement. The ANDA "defines what the applicant would be permitted to do (upon approval)," and it "circumscribes and dominates the assessment of potential infringement." *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1281 (Fed. Cir. 2014). This Court's precedent thus requires a district court to start with the ANDA to determine whether the defendant seeks approval to market an infringing drug product. *Vanda Pharms. v. W.-Ward Pharms.*, 887 F.3d 1117, 1130 (Fed. Cir. 2018) (holding the district court's "analysis of the proposed label to assess potential direct infringement by physicians was proper under our precedent" because "the ANDA itself dominates the analysis."). Here Teva's ANDA clearly answers the infringement question in the affirmative. Yet Teva and the district court instead focus on so-called "real-world practice" with the branded drug that is purportedly inconsistent with the instructions in Teva's ANDA Label. That approach defies decades of this Court's precedent, and would create an unworkable standard that essentially permits speculative evidence about whether doctors will refrain from using a product in a manner ***expressly instructed*** in the ANDA over the life of the patent to override the ANDA's express instructions. *Cf.*, *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731

F.3d 1271, 1280 (Fed. Cir. 2013) (evidence outside the ANDA cannot "override" information in the ANDA.).  Moreover, even if it was appropriate to look outside Teva's ANDA, that evidence supports the ANDA's infringing instructions.

## Inducement

Teva fails to identify any inducement decision from this Court where a patentee was required to prove, as the district court required here, that an accused label encouraged doctors to administer a given method of treatment "in the first place.".  That novel ruling has no support in logic.  Instead, Corcept met its burden by showing that Teva's ANDA Label instructs doctors to use the claimed dosage regimens when "necessary" to treat the relevant patient populations.

Moreover, Teva hardly addresses claim 6 of the '800 patent, which does not require that a doctor prescribe both mifepristone and a strong CYP3A inhibitor together.  Instead, that claim requires only that the doctor prescribe 900 mg mifepristone to the subset of patients who are already on strong CYP3A inhibitors.  Thus, even if this Court were to adopt an "in the first place" standard, it would not save Teva from infringing claim 6, which does not require the direct infringer to prescribe a strong CYP3A inhibitor at all, let alone "in the first place."

At bottom, the district court's judgment, and Teva's defense thereof, rewrites decades of Hatch-Waxman jurisprudence and, if endorsed by this Court, would

fundamentally alter the ways in which pharmaceutical patents claiming methods of treatment are litigated. This Court should follow its existing precedent and reverse.

## ARGUMENT

## I.    TEVA CANNOT DEFEND THE DISTRICT COURT'S DIRECT INFRINGEMENT RULING

### A.    The District Court Erred In Failing To Start With The ANDA

Teva's argument (Br. 27-29) that the finder of fact need not to start with the ANDA, but may instead find no direct infringement based on outside evidence that contradicts the ANDA itself, contravenes 25 years of Hatch-Waxman case law.

In a Hatch-Waxman action, there are two possibilities for a direct infringement analysis under this Court's precedent: (1) the ANDA fully answers the direct infringement question; or (2) the ANDA does not answer the direct infringement question, and it is therefore necessary to consider evidence outside the ANDA. The district court, however, *started* with evidence outside the ANDA, allowed it to dominate the analysis, and did not consider whether Teva's ANDA Label answered the direct infringement inquiry at the outset.[1] Teva fails to reconcile the district court's framework with this Court's precedent.

---

[1]    Contrary to Teva's argument (Br. 20-21), Corcept is not arguing that "clear error" applies; instead, Corcept argues that the district court committed legal error, which is entitled to de novo review.

### 1. Where The ANDA Answers The Direct Infringement Question, The ANDA Controls

This Court has held time and again that where the ANDA itself answers the direct infringement inquiry, a district court may not allow evidence outside the ANDA to "override" information in the ANDA. *Sunovion*, 731 F.3d at 1280. In *Sunovion*, for example, the asserted claims dealt with formulations containing less than 0.25% of an eszopiclone isomer. *Id.* at 1274. The defendant's ANDA sought approval for a formulation containing no more than 0.6% (i.e., 0.0–0.6%) of the isomer. *Id.* at 1275. The district court granted summary judgment of non-infringement, based upon a declaration from the defendant stating it would only make and sell non-infringing products containing 0.3–0.6% of the isomer. *Id.* This Court held that the district court had committed reversible error by crediting the declaration over the ANDA itself. Because the ANDA directly answered the infringement inquiry, it defined the defendant's product "such that it meets the limitations of an asserted claim." *Id.* at 1280. It was therefore reversible error for the district court to credit "other evidence" outside the ANDA—such as the defendant's declaration—to "override the conclusion" that the ANDA defined an infringing generic drug product. *Id.* As this Court reasoned, "[s]imply saying 'But I won't do it' is not enough to avoid infringement." *Id.*

Here, the district court committed the same error as in *Sunovion*. The district court accepted Dr. Snyder's speculative testimony that doctors simply "won't"

practice the patented dosage regimen, despite Teva having sought and received FDA approval to market a label that instructs doctors to practice the patented dosage regimen. Appx32-33. Simply saying "doctors won't do it" is not enough to avoid infringement and override the clear instructions in Teva's ANDA Label.

*In re Brimonidine Patent Litigation*, 643 F.3d 1366 (Fed. Cir. 2011) is similarly instructive. There, the asserted claims covered a brimonidine solution "adjusted to a pH of 7.0 or greater." 643 F.3d at 1376-77. The defendant's ANDA specified a maximum pH of 6.7. *Id.* at 1377. The patentee introduced real-world evidence that the defendant would "necessarily manufacture its product at an infringing pH of 7.0 or above," and the district court ruled for the patentee on that basis. *Id.* This Court reversed because an "ANDA specification defining a proposed generic drug in a manner that directly addresses the issue of infringement will control the infringement inquiry." *Id.* (citation omitted). The defendant's ANDA directly addressed infringement—it specified the pH of the product upon both manufacture and sale. It was therefore error to rely on so-called "other relevant information" to override the ANDA.

Other cases similarly confirm the ANDA must dominate the analysis. In *Vanda*, this Court affirmed that an ANDA label instructing "that the '[i]loperidone dose should be reduced by one-half for poor metabolizers of CYP2D6'" showed direct infringement of a method claim requiring a 50% iloperidone dose reduction

for poor metabolizers. 887 F.3d at 1122, 1129-1130. This Court held that an "analysis of the proposed label to assess potential direct infringement by physicians was proper under our precedent" because "***the ANDA itself dominates the analysis***" and "a patentee does not need to prove an actual past instance of direct infringement." *Id.*[2]

Likewise, in *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241 (Fed. Cir. 2000), this Court affirmed that a claim requiring a surface area of 1-4 m$^2$/g was not directly infringed by an ANDA with a surface area specification of "at least 5 m$^2$/g" because "the specification in Elan's ANDA mandates a finding of no literal infringement." *Id*. at 1248-49. This Court discounted evidence outside the ANDA (potentially infringing "biobatches") that contradicted the ANDA because "***the ANDA directly addresses the question of infringement***" and therefore "Elan's biobatch does not control the issue of infringement." *Id.* at 1250.

And, most recently, in *Par Pharm. v. Eagle Pharms.*, 44 F.4th 1379 (Fed. Cir. 2022), this Court held that an ANDA "directly resolves the infringement question" if "it defines a proposed generic product in a manner that either meets the limitations of an asserted patent claim or is outside the scope of such a claim." *Id.* at 1383-84. On that basis, the Court affirmed a finding of non-infringement to claims requiring

---

[2] All emphasis has been added unless otherwise noted.

a certain pH where the ANDA's "specification[s] directly and unambiguously address the pH range of Eagle's proposed product and thus speak directly to infringement." *Id.* at 1384.

Thus, when the ANDA itself answers the direct infringement question, it is improper for a district court to allow outside evidence to override the ANDA.

### 2. Even Where The ANDA Does Not Answer The Direct Infringement Question, The ANDA Remains the Starting Point

This Court's precedent is similarly clear that evidence outside of the ANDA can be appropriate where the ANDA does not resolve direct infringement. But even in those circumstances, this Court's direct-infringement inquiry—unlike the district court's analysis below—uniformly and unequivocally starts with the ANDA.

In *Glaxo v. Novopharm*, 110 F.3d 1562 (Fed. Cir. 1997), for example, this Court explained that "[o]f course, this hypothetical inquiry is properly grounded in the ANDA application," but affirmed a finding of non-infringement where the ANDA did not resolve whether the ANDA product would contain the infringing crystal form. *Id.* at 1569. As this Court later explained, "the [evidence outside the ANDA] in *Glaxo* was properly considered because the ANDA specification in that case *did not define the compound in a manner that directly addressed the issue of infringement*." *Bayer*, 212 F.3d at 1250.

8

In *Abbott Labs. v. TorPharm.*, 300 F.3d 1367 (Fed. Cir. 2002), this Court likewise explained that "an ANDA specification defining a proposed generic drug in a manner that directly addresses the issue of infringement will control the infringement inquiry." *Id.* at 1373. And only because "TorPharm's ANDA does not specify the number of repeating subunits" did this Court look to evidence outside the ANDA. *Id.* at 1375-77.

Similarly, in *Ferring B.V. v. Watson Labs.*, 764 F.3d 1401 (Fed. Cir. 2014), this Court looked outside the ANDA to determine infringement of a claim requiring a specific dissolution profile because the ANDA was silent on that issue. This Court re-affirmed that "***the ANDA itself dominates the analysis***," and "[i]n some cases, the ANDA specification directly resolves the infringement question." *Id.* at 1408-09.

And, in *Genentech, Inc. v. Sandoz Inc.*, 55 F.4th 1368 (Fed. Cir. 2022), because the ANDA label stated that concomitant use "should be discontinued" "and avoided," this Court looked beyond the ANDA and considered "testimony from physicians that, in their decades of treating IPF patients, they had never prescribed pirfenidone to an IPF patient taking fluvoxamine." *Id.* at 1375, 1380.

Thus, this Court always treats the ANDA as the start of the direct infringement inquiry, resorting to evidence outside the ANDA only where the ANDA does not resolve the inquiry. The district court here inverted that analysis, starting with

outside evidence and allowing it to dominate the analysis and override the ANDA.
Teva fails to show how the district court's approach reflects faithful application of
this Court's precedent.

**B.    The District Court Erred In Looking Beyond Teva's ANDA**

    **1.    The District Court's Findings Establish That Teva's ANDA
Answers The Direct Infringement Question**

    Once the focus is properly on the ANDA itself, Teva cannot defend the district
court's direct infringement ruling.  Although Teva seeks to frame (Br. 30-31) the
trial as a classic battle of the experts, both sides' experts *agreed* that the instructions
in Teva's ANDA Label recommend an infringing use.  Teva's own expert could not
have been clearer.  For example, with respect to claim 1 of the '800 patent, Dr.
Snyder agreed Teva's ANDA Label "recommends" practice of the claimed method:

> **Q**. When a healthcare professional administers a strong
> CYP3A inhibitor to a patient taking 1,200 milligrams of
> mifepristone, Teva's package insert instructs medical
> professionals to reduce the mifepristone dose to 900
> milligrams, correct?
>
> **A**. Yes.
>
> **Q**. Teva's package insert recommends reducing a 1,200-
> milligram mifepristone dose to 900 milligrams when
> adding a strong CYP3A inhibitor, correct?
>
> **A**. Yes.

Appx1470.  His testimony was equally clear with respect to the other asserted claims
(*e.g.*, claim 6 of the of the '800 patent):

> **Q**. In section 5.6, Teva's label recommends a maximal dose of 900 milligrams per day when mifepristone is used with strong CYP3A inhibitors, correct?
>
> **A**. I see that.
>
> **Q**. And you consider that a recommendation, correct?
>
> **A**. Yes.

Appx1471.  The district court, moreover, found that Teva's ANDA Label "provides instructions *how* to coadminister the substances to achieve an efficacious result *if* a physician determines that it is medically necessary." Appx41 (emphasis original). Similarly, the court found that Teva's ANDA Label "provid[es] dosing instructions if a physician independently determines that it is medically necessary to prescribe mifepristone and a strong CYP3A inhibitor together."  Appx35.

Teva never once addresses the import of its own expert's admissions.  As evidenced by Teva's own expert, Teva's ANDA Label recommends an infringing use.[3]  The ANDA thus answers the direct infringement inquiry, and the district court erred in concluding otherwise based on evidence outside the ANDA.

---

[3]    Teva is therefore wrong to argue (Br. at 23) that its "label does not recommend infringement," and so (in Teva's view) even if Corcept's legal argument were correct, the factual "premise fails."  As set forth above, the experts agree that the label recommends infringing use, and Teva never once addresses its own expert's testimony.

## 2.     Outside Evidence Cannot Override the ANDA

Teva contends (Br. 22-23 (citing *Genentech*)) this Court's precedent "requires" the district court to consider "all relevant evidence," including "physician practice." Teva then misstates Corcept's position in asserting (Br. 29) that "Corcept is contending that courts may not look at real-world practice to determine whether future infringement of a patented method involving the ANDA product is likely." Not so. Corcept's position is that where the ANDA Label itself clearly answers the direct infringement inquiry, evidence outside the ANDA cannot override the ANDA. *Cf. Sunovion*, 731 F.3d at 1280. *Genentech* does not hold otherwise. In that case, the ANDA label instructed doctors to ***avoid*** coadministering the drugs set forth in the patented methods. This Court endorsed the district court's crediting of physician practice where the ANDA label did not clearly show infringement—and that outside evidence showed physicians avoided coadministering those drugs, and had never coadministered them in the past.

Here, by contrast, Teva's ANDA Label instructs physicians to coadminister when "necessary," and to perform the patented dosage adjustments when doing so. Appx35. The record also includes numerous instances of past medical necessity requiring coadministration (Appx1060-61, Appx1262-63), such that the district court stopped admitting further such evidence as cumulative (Appx1507-08). Yet the district court credited Dr. Snyder's contrary testimony that he personally would

12

nonetheless avoid coadministration as dispositive of the direct infringement inquiry. Appx32-34. Teva cites no case where this Court has ever held that such extrinsic evidence can be used to *override* the content of the ANDA in this manner. Indeed, *Sunovion* held the contrary—that the ANDA filer was bound by the ANDA even if it submitted evidence that its manufacturing process deviated from the specifications of the ANDA. 731 F.3d at 1279-80. Thus, Teva's argument fails as a legal matter.

Teva's argument also fails because it improperly requires of Corcept evidence that has never been required under this Court's precedent. Here, the patient population is small (1,500 persons in the U.S.) and the methods newly developed (part of the branded label for only 11 months prior to the close of fact discovery). It makes no sense to conclude that because no doctor testified at trial that they provided infringing doses in the 11 months immediately after the updated Korlym® Label was approved, that Teva can now market a product with an infringing ANDA Label describing a medically-beneficial therapeutic method over the remaining *13 years* of the patents-in-suit. Instead, and contrary to Teva's argument, this Court's precedent demands that the focus remain on the ANDA Label itself.

### 3. Method Patents Should Not Be Treated Differently

Teva incorrectly suggests (Br. 27-28) that application of these well-settled legal principles is "misplaced" in a "case involving method patents." Not so. "[T]raditional patent law principles" apply in every case; the ANDA applicant is

bound by the "ANDA specification." *Ferring*, 764 F.3d at 1408. This Court has never used a different direct infringement inquiry for method of treatment patents, and there is no reason to adopt such a standard now. Instead, adherence to this Court's precedent, including most significantly *Vanda*, requires that where an accused generic drug label recommends or encourages an infringing use, the ANDA answers the direct infringement inquiry. 887 F.3d at 1130 (finding direct infringement based on the content of the accused label because "the ANDA itself dominates the analysis.").

Teva is also wrong to argue (Br. 23) that *Genentech* "squarely rejected" the possibility of the ANDA label resolving the direct infringement inquiry with respect to method claims. Teva overlooks a key difference between *Genentech* and this case: there, unlike here, the accused ANDA label instructed ***against*** the infringing use. The accused label stated that "[t]he concomitant administration of pirfenidone and fluvoxamine or other strong CYP1A2 inhibitors (e.g., enoxacin) ***is not recommended***." *Genentech*, 55 F.4th at 1375. And so, because the ANDA did not answer the direct infringement inquiry in *Genentech*, this Court considered other evidence, such as prior physician practice. *Id.* at 1379-80. Consideration of that other evidence revealed that, unlike here, no physician had ***ever*** coadministered the two drugs at issue, despite many years of availability. *Id.* As a result of ***that***

14

evidence, future direct infringement was deemed unlikely.  *Id.  Genentech* does not

hold that evidence outside the ANDA can override the ANDA itself.

### 4.    *Vanda* **Does Not Require Evidence of Physician Practice**

Teva also misreads *Vanda* in arguing (Br. 27) that it "did not hold that the

label necessarily resolves the direct-infringement inquiry" and instead "emphasized

the relevance of real-world practice."  There, in accordance with well-settled law,

the patentee had argued that "it did not need to prove instances of direct infringement

by physicians because this is a Hatch-Waxman case."  887 F.3d at 1129.  This Court

***agreed*** with the patentee, holding that "a patentee ***does not*** need to prove an actual

past instance of direct infringement by a physician to establish infringement."  *Id.*

And it held that "patentees in Hatch-Waxman litigations asserting method patents

do not have to prove that prior use of the NDA-approved drug satisfies the

limitations of the asserted claims."  *Id.* at 1130.  Accordingly, this Court further held,

a patentee "can satisfy its burden to prove the predicate direct infringement by

showing that if the proposed ANDA product were marketed, it would infringe the

[asserted] patent," and "the ANDA itself dominates [that] analysis."  *Id.*  Thus,

*Vanda* did not hold or "emphasize" that it is proper to credit testimony regarding

past physician practice (and then allow that testimony to override the ANDA) when

the ANDA itself answers the direct infringement question.

15

Teva also misreads (Br. 27) the *Vanda* holding as having "reaffirmed the proposition that 'the infringement determination is based on consideration of all the relevant evidence,'" including past physician practice.   Teva—like the district court—takes *Vanda's* discussion of "all relevant evidence" out of context.   Instead, in support of its holding that it was proper for the *Vanda* district court to find direct infringement based on the label alone, this Court cited to *Ferring*.   The full quote from *Ferring* confirms that the "all the relevant evidence" is the ANDA itself when the ANDA directly resolves the infringement question:

> The infringement determination is thus based on consideration of ***all the relevant evidence***, and "[b]ecause drug manufacturers are bound by strict statutory provisions to sell only those products that comport with the ANDA's description of the drug," ***the ANDA itself dominates the analysis***. . . .   In some cases, the ANDA specification directly resolves the infringement question because it defines a proposed generic product in a manner that either meets the limitations of an asserted patent claim or is outside the scope of such a claim. . . .   In cases in which the ANDA specification does not resolve the infringement question in the first instance, we have endorsed the district court's reference to relevant evidence.

*Ferring*, 764 F.3d at 1408.   What that means is that, as in *Sunovion* and *Brimonidine*, "other relevant information" cannot change the outcome of a direct infringement inquiry that an ANDA has already clearly answered.

**C.    Even If Teva's ANDA Label Alone Were Not Sufficient To Prove Direct Infringement, the Extrinsic Evidence Together With The ANDA Label Is More Than Sufficient**

Even assuming Teva's ANDA Label itself does not resolve the inquiry, the "real world" evidence coupled with the ANDA Label demonstrates that direct infringement will likely occur.  Here, Teva's ANDA Label instructs physicians to practice the patented dosage adjustments when dual therapy is "necessary" for the patient.  At trial, the evidence showed that numerous different doctors—including Teva's own expert, Dr. Dobs—have in fact found dual therapy to be "necessary" for their patients.  *See* Opening Brief § I.B.1.  This is why FDA asked Corcept to run the studies in the first place.  Appx13.  Thus, this is far from a case where clinical practice bears little resemblance to the patented methods of use.  This case is not like *Genentech*, where the label instructed doctors to avoid dual therapy, and the real-world evidence showed that doctors followed that instruction.

Moreover, as noted in the PTAB decision that was affirmed by this Court, when the FDA first approved Korlym® in 2012, it recognized that because doctors already prescribed ketoconazole (a strong CYP3A inhibitor) to patients with Cushing's syndrome, there was a "high potential for concomitant use" with mifepristone and thus a drug-drug interaction trial was necessary to "help provide more therapeutic options available to Cushing's patients and appropriate labeling of mifepristone when co-administered with CYP3A inhibitors."  *Teva v. Corcept*,

PGR2019-00048, 2020 WL 6809812, at *5 (P.T.A.B. Nov. 18, 2020).  Corcept did

the work and invented a safe course of treatment for those patients.  Teva cannot

defend the district court's three legal errors in discounting the real-world evidence.

*First*, Teva cannot defend the district court's adoption of an erroneous legal

standard in ruling that future infringement would be unlikely because "Corcept has

not persuaded this Court that today ***most*** patients who receive a strong CYP3A

inhibitor are already taking at least 900 mg of Korlym® or that patients who are

already receiving a strong CY3PA inhibitor will be prescribed at least 900 mg of

Korlym®."  Appx37.  There is no "most" requirement; infringement requires a

reasonable likelihood that there will be ***some*** infringement of the method.  *Vanda*,

887 F.3d at 1130 ("we have not required evidence regarding the general prevalence

of the induced activity").  Teva does not dispute that requiring prevalence would be

error.  Instead, Teva argues (Br. 42) that the district court "neither stated nor implied

that a finding of infringement would require most patients to infringe."  But that is

exactly what the district court erroneously required of Corcept.  Appx37.

***Second***, Teva fails to persuasively defend (Br. 37-39) the district court's

reliance on the availability of the drug Isturisa® as an alleged off-label non-infringing

alternative to mifepristone.  This Court has repeatedly held that allegedly non-

infringing alternatives are irrelevant to inducement.  *See, e.g.*, *Vanda*, 887 F.3d at

1133; *see also AstraZeneca LP v. Apotex Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010)

("The pertinent question is whether the proposed label instructs users to perform the patented method" and that "it is *irrelevant* that some users may ignore the [infringing] warnings in the proposed label."). The existence of other treatment options is not a defense to introducing a product that will infringe when administered according to the ANDA.

Moreover, even crediting Dr. Snyder's testimony that he would use an off-label alternative to mifepristone, Teva has no response to the fact that it presented no evidence that even a single mifepristone prescription has *ever* been lost to Isturisa®. Korlym® and Isturisa® have different FDA-approved indications. Korlym® is indicated "to control hyperglycemia secondary to hypercortisolism" in patients with "Cushing's *syndrome* who have type 2 diabetes mellitus or glucose intolerance." Appx4237. Isturisa®, by contrast, is indicated for the treatment of "Cushing's *disease*," which is a subset of Cushing's Syndrome. Appx1518. And the Isturisa® label instructs an even larger dose reduction for dual therapy than the Korlym® Label, meaning that there is an even larger drug-drug interaction effect for Isturisa®. Appx1519-20. Additionally, the Nieman publication that Teva and the district court relied upon[4] (Br. 34; Appx32-33) does not mention combining Isturisa®

---

[4] Teva's reliance on Nieman is misplaced because Nieman concerns only the 2012 Korlym® label and cites only to mifepristone publications from *before* the 2019 label existed. (Appx4773; Appx1531).

with any other drugs (including CYP3A inhibitors). Appx4766. Teva has no response to the fact that it presented no evidence that Isturisa® has *ever* been coadministered with a strong CYP3A inhibitor or that a physician would rather transition a seriously ill patient from Korlym® to Isturisa® only to be faced with managing an even larger dose adjustment in the event of coadministration.

*Third*, Teva is also unable to defend (Br. 40-42) the district court's reliance on non-infringing doses in the Teva ANDA Label as a basis for finding no direct infringement. This Court has previously held that even if "not every practitioner will prescribe an infringing dose," that does not negate the label's instructions to infringe. *Vanda*, 887 F.3d at 1132.

In sum, the ANDA plus the real-world evidence that doctors have found it necessary to coadminister mifepristone with strong CYP3A inhibitors for some patients was more than enough for Corcept to have met its burden of proof on direct infringement.

## II. TEVA CANNOT DEFEND THE DISTRICT COURT'S INDUCED INFRINGEMENT RULING

Teva argues (Br. 44) that its ANDA Label merely *describes* an infringing use and therefore does not induce infringement. But that "description" instructs "how to engage in an infringing use"—which demonstrates affirmative intent. *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1333 (Fed. Cir.

2021) (Labels with directions instructing "how to engage in an infringing use, show an affirmative intent that the product be used to infringe.").

Indeed, the district court expressly found that Teva's ANDA Label "provides instructions *how* to coadminister the substances to achieve an efficacious result *if* a physician determines that it is medically necessary," (Appx41) (emphasis original), and provides infringing "dosing instructions if a physician independently determines that it is medically necessary to prescribe mifepristone and a strong CYP3A inhibitor together" (Appx35). As Teva's corporate witness testified:

> Q. Teva's labeling reflects how Teva intends for physicians to use its mifepristone ANDA product, correct?
>
> A. That's how I understand the labeling to be used, yes.
>
> Q. . . . Teva intends for physicians to prescribe its mifepristone ANDA product in accordance with [the ANDA label], correct?
>
> A. I think that's the purpose of the package insert.

Appx1075*; see also* Opening Br. § II.A; *supra* at § I.B.1 (Dr. Snyder agreeing that Teva's label provides "a recommendation" to practice claimed methods). This evidence is sufficient to show the requisite intent.

## A.  Teva Cannot Defend The District Court's Opinion

### 1.  *HZNP* Is Inapposite

Teva argues that the district court properly framed the inducement question as whether the label "tell[s] physicians to co-administer the drugs in the first place."

(Br. 52-53). Teva and the district court ask the wrong question. The question is whether, for the population of patients who require 900 or 1200 mg of mifepristone and a strong CYP3A inhibitor; ***does the label encourage the claimed dose adjustment?*** *GlaxoSmithKline*, 7 F.4th at 1333; *H. Lundbeck v. Lupin Ltd.*, 87 F.4th 1361, 1370 (Fed. Cir. 2023); *Braintree Labs. v. Breckenridge*, 688 F. App'x 905, 910 (Fed. Cir. 2017). As the district court noted: "the only reason you're going to look at the label is because the physician has deemed it necessary to give the combination." Appx1206. And the district court found that Teva's ANDA Label provides infringing "dosing instructions if a physician independently determines that it is medically necessary to prescribe mifepristone and a strong CYP3A inhibitor together." Appx35. Indeed, there was no dispute at trial that the instructions in Teva's ANDA Label for patients who require 900 or 1200 mg of mifepristone and a strong CYP3A inhibitor read directly on the claimed methods:

**Table 1. Dose adjustment of mifepristone tablets when strong CYP3A inhibitor is added**

| Current dose of mifepristone tablets | Adjustment to dose of mifepristone tablets if adding a strong CYP3A inhibitor |
|---|---|
| 300 mg | No change |
| 600 mg | Reduce dose to 300 mg. If clinically indicated, titrate to a maximum of 600 mg. |
| 900 mg | Reduce dose to 600 mg. If clinically indicated, titrate to a maximum of 900 mg. |
| 1,200 mg | Reduce dose to 900 mg. |

Appx4043. Thus, Teva induces infringement under the proper standard. In any event, Teva's argument is inapplicable to claim 6, which concerns patients who ***are already taking a strong CYP3A inhibitor***. *Infra* §II.B.

22

Teva's arguments to the contrary notwithstanding (*see* Br. at § II.B.1), *HZNP* is neither "dispositive," nor does it demand application of an "in the first place" standard to the asserted claims. This Court did not find non-infringement in *HZNP* due to a lack of encouragement to consult the accused label "in the first place." Instead, the accused label made two of the three patented steps optional, at the patient's discretion. Specifically, the patent required administration of a topical medication, waiting for the treated area to dry, and then subsequent application of a sunscreen, or an insect repellant. 940 F.3d at 683. But the accused label left it up to the patient whether to ever apply sunscreen or bug spray after using medication. *Id.* at 699-700. On that basis, this Court held that it could not infer the generic drug manufacturer's intent to induce infringement of optional method steps. *Id.* at 702.

This case is different. None of the claimed dose adjustment steps are left to the patient's discretion. When administering a strong CYP3A inhibitor to a patient already taking 900 or 1200 mg mifepristone, Teva's ANDA Label instructs doctors that an infringing dosage adjustment is "***required***." Appx4053. The testimony from Corcept's expert that Teva block-quotes (Br. at 48) proves the point: "If you're going to co-administer, you must do this." There is no optionality in Teva's label when prescribing these drugs to the relevant patient populations.

Teva argues (*id.*) that its "label makes co-administration 'optional' as well." But Teva overlooks that ***initiation of any*** given method of treatment is at the

23

discretion of the doctor and therefore, in Teva's view, "optional." This is the fallacy at the heart of the "in the first place" standard. For example, Teva admits (Br. at 53) that its label encourages physicians to prescribe mifepristone therapy at 300 mg for the treatment of Cushing's syndrome for any given patient. But whether to do so is ultimately up to the physician's discretion, and therefore also, according to Teva, "optional." These two positions are irreconcilable. The law does not ask whether a generic drug label encourages administration of a drug "in the first place," because (as the evidence shows) doctors decide whether to administer drugs "in the first place" based on a variety of patient- and disease-specific factors, *not* the instructions in a generic drug label. Appx1057-58. The question for deciding infringement is not whether a label encourages use of a drug "in the first place," but whether the label recommends or encourages a doctor to use a drug in an infringing manner (e.g., at an infringing dose) once the doctor has decided to use that drug and consult the accompanying package insert. Here, the record evidence shows that once a doctor has decided to coadminister to the relevant patient populations, Teva's label requires that the patented methods be performed. It was legal error to fail to find infringement on these facts.

Teva further argues that its label instructions operate in an "if/then" manner and therefore do not encourage infringement. Br. 46-47. Teva's reliance on *HZNP* for that proposition is also misplaced. *HZNP* did not create an "if/then" exception

24

to induced infringement; instead, as discussed above, the *HZNP* instructions failed to induce infringement because two of the three claimed method steps were optional. 940 F.3d at 700.  Here, in contrast, Teva's ANDA Label's instructions that a doctor should coadminister "only when necessary" does not make optional any of the instructed steps when coadministration is required.  An instruction that "if" the claimed conditions apply "then" the claimed method should be practiced is nothing less than an instruction to practice the claimed method.  That is the essence of induced infringement.  *AstraZeneca*, 633 F.3d at 1060 ("The pertinent question is whether the proposed label instructs users to perform the patented method.").

There is nothing unusual about patenting novel methods of treatment that enhance safety for a small cohort of patients for an already existing drug.  As this Court recently explained, it is common for innovators to discover "new method[s] of use to ensure patient safety." *Lundbeck*, 87 F.4th at 1371.  If the "FDA requires" that the new method "be included in the label, the ANDA label may induce infringement" of the new patents.  *Id*.  That is what happened here.  The FDA required Corcept to conduct drug-drug interaction studies because of the "high potential" of dual therapy in some patients.  *Teva*, 18 F.4th at 1379 ("[The FDA] noted that coadministration 'may present a safety risk' and that, without a drug-drug interaction study, a 'lack of accurate knowledge' may 'deprive the patients on strong inhibitors of the use of mifepristone.'").  Corcept made a medically-valuable,

patentable discovery that helps those patients.  And the FDA required this use be included on the amended 2019 label, precisely because it would provide instructions for safe coadministration for patients who would otherwise be deprived of Korlym®.[5]

### 2.    Warnings Do Not Defeat Inducement

Teva argues (Br. at 51) that the phrase "only when necessary" in its ANDA Label discourages coadministration, and thus cannot induce infringement.  But the district court never found that the label discourages coadministration in all instances.  Instead, the district court relied on testimony from Dr. Snyder, who opined that "physicians would read Teva's label as a warning not to coadminister mifepristone and a strong CYP3A inhibitor, **unless medically necessary**."  Appx43 (emphasis added).  And Teva ignores the district court's factual finding regarding the meaning of "medically necessary": "*i.e.* unless the benefit to the patient outweighs the risks." Appx43-44.  As Teva's expert Dr. Dobs explained, "all medications … have a risk-benefit ratio."  Appx1058.  Dr. Dobs further testified that she had previously prescribed mifepristone with the strong CYP3A inhibitor ketoconazole because:

> Q. [T]here's instances where it may be necessary to take advantage of mifepristone and ketoconazole's dual

---

[5]    Unlike in *Genentech* where this Court dismissed Genentech's arguments regarding why the FDA included the instructions in the label because there was "no evidence to support its speculation," here the evidence shows that the FDA included the instructions in the label to "provide more therapeutic options available to Cushing's patients and appropriate labeling of mifepristone when co-administered with CYP3A inhibitors."  Appx4451.

> mechanisms of action to reduce cortisol and bring a benefit
> to the patient; is that fair?
>
> A. Yes. Yes, that is what I said previously.

Appx1061.   The other experts testified similarly.   *See* Appx1264 (Dr. Carroll

explaining that he would coadminister if the benefit outweighed the risk); Appx1440

(Dr. Snyder explaining that "the benefit of concomitant use should be weighed

carefully against the potential risks.").   In fact, as Dr. Snyder agreed, "[w]henever

you prescribe any drugs, the benefits should be carefully weighed against the risks."

Appx1493.   Thus, "only when necessary" is the same risk-benefit analysis that is

used for every drug, and Dr. Dobs and Dr. Carroll both testified that the risk-benefit

analysis would lead to coadministration.   Appx1058-61, Appx1264.

Teva also wrongly insists (Br. 55) that its ANDA Label, which copies the

2019 Korlym® Label, contains "[e]ssentially the same warnings" as the 2012

Korlym® Label "that Corcept once characterized as 'contraindicate[ing]' co-

administration of mifepristone and strong CYP3A inhibitors."   Teva ignores that the

district court found that there are "***meaningful differences*** between the 2012 label

and 2019 label based on [Corcept's patented] breakthrough."   Appx43.   Indeed, there

is no dispute that the 2019 label changes directly match the asserted claims.[6]  *See*

Opening Br. §Statement of the Case.F; I.A.2; II.B.

---

[6]     Notably, Teva never addresses new Section 2.5, titled "Concomitant Administration with CYP3A Inhibitors," which provides FDA-approved dosing

The asserted patents, like many inventions, claim methods of treating in difficult conditions that might preferably be avoided in the first place. Specific intent to induce infringement of such methods does not require that the infringer affirmatively desire that all or most patients require dual therapy. Warnings related to dual therapy "unless medically necessary" do not defeat induced infringement of the claimed dual therapy dosing regimen any more than discouraging reckless driving would prevent induced infringement of claims to airbags.

### 3.    The Existence Of Non-Infringing Alternatives Is Irrelevant

Teva argues (Br. 60) that the district court properly found that "a physician can follow Teva's label and never infringe" by prescribing doses of 300 and 600 mg of mifepristone with strong CYP3A inhibitors. But the asserted claims do not involve the patients requiring 300 or 600 mg mifepristone; the claims involve the patients requiring 900 or 1200 mg mifepristone. Infringement exists here because Teva's ANDA Label provides exclusively infringing instructions for patients receiving 900 and 1200 mg mifepristone and strong CYP3A inhibitors; the existence of non-infringing doses is irrelevant:

---

instructions for the safe co-administration of mifepristone with "strong inhibitors of CYP3A" (Appx4238) or updated Section 12.3, which includes the data from the studies underlying the patents-in-suit showing that mifepristone can be safely administered with CYP3A inhibitors ketoconazole and itraconazole at doses up to 900 mg (Appx4250-51).

**Table 1. Dose adjustment of mifepristone tablets when strong CYP3A inhibitor is added**

| Current dose of mifepristone tablets | Adjustment to dose of mifepristone tablets if adding a strong CYP3A inhibitor |
|---|---|
| 300 mg | No change |
| 600 mg | Reduce dose to 300 mg. If clinically indicated, titrate to a maximum of 600 mg. |
| 900 mg | Reduce dose to 600 mg. If clinically indicated, titrate to a maximum of 900 mg. |
| 1,200 mg | Reduce dose to 900 mg. |

*See* Opening Br. at §I.A.2.  Corcept agrees with the district court's finding that "Teva's label does not provide ***exclusively*** infringing instructions" (Appx44), but that finding is legally irrelevant.  *See AstraZeneca*, 633 F.3d at 1060.

Nor is Teva correct (Br. 61) that, under *HZNP* and *Warner-Lambert*, the existence of non-infringing uses is relevant to inducement.  *Warner-Lambert* is an off-label use case where the patentee nonetheless argued that the defendant had intent to induce infringement of a method that was *not* set forth in the label.  As this Court explained in *Vanda*, "[i]n the context of that off-label use case where there were 'substantial noninfringing uses,' we declined to 'infer' intent to induce infringement."  887 F.3d at 1133 (quoting *Warner-Lambert*, 316 F.3d at 1365).  *HZNP* cites *Warner-Lambert* for a similar principle, and in *HZNP*, the accused label did not require performance of the patented method steps.  940 F.3d at 702.  The Court therefore declined to infer intent to induce the practice of optional steps in the face of evidence that the accused product would ordinarily be used in a non-infringing manner.  *Id*.  But here, Teva did not even try to carve the infringing instruction out of its ANDA Label, and infringement is both required and unavoidable when using Teva's ANDA product according to its label to treat the

relevant patient populations.  It therefore is irrelevant that the accused product could be used to treat other patient populations in a non-infringing manner.

### B.    Teva Cannot Defend the District Court's Error Regarding Claim 6 of the '800 Patent

Teva's defense of the district court's inducement ruling is predicated on (Br. 53) the asserted claims "requir[ing] not only administering mifepristone but also doing so *together* with a strong CYP3A inhibitor," such that, in Teva's view, "Corcept would [] have to show that the label instructs users to prescribe the drugs together 'in the first place.'"  Not so for claim 6.  To infringe claim 6, a physician only needs to prescribe 900 mg mifepristone to a patient with Cushing's syndrome who is *already taking* a strong CYP3A inhibitor.  That same doctor need not also administer the strong CYP3A inhibitor.  While Teva argues (Br. 59) that the claim nonetheless "requires the drugs to be given together," that requirement is found nowhere in the claim.  All the claim requires is that 900 mg mifepristone be given to a patient *already* taking the strong CYP3A inhibitor (Appx20); the claim does not require that the drugs subsequently "be given together" by the same physician.  Thus, to infringe, the doctor need only prescribe 900 mg mifepristone according to Teva's ANDA Label.  And Teva admits (Br. 53) that its ANDA Label "*does* instruct users to prescribe [mifepristone]," and Teva's ANDA Label specifically instructs physicians to titrate up to an infringing 900 mg dose for patients who arrive already taking a strong CYP3A inhibitor.  Appx4043.  Thus, by Teva's own admission, the

"in the first place" standard does not apply to claim 6 and Teva infringes even under its erroneous legal standard.

## CONCLUSION

The judgment should be reversed.

Respectfully submitted,

DATED: May 28, 2024

/s/ Eric C. Stops

F. Dominic Cerrito
Eric C. Stops
Evangeline Shih
Brian C. Cannon
William B. Adams
Daniel C. Wiesner
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave, 22nd Floor
New York, NY 10010
(212) 849-7000
nickcerrito@quinnemanuel.com
ericstops@quinnemanuel.com
evangelineshih@quinnemanuel.com
briancannon@quinnemanuel.com
williamadams@quinnemanuel.com
danielwiesner@quinnemanuel.com

*Attorneys for Appellant*
*Corcept Therapeutics, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>24-1346</u>

**Short Case Caption:** <u>Corcept Therapeutics, Inc. v. Teva Pharmaceuticals USA, Inc.</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes <u>6,959</u> words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>05/28/2024</u>

Signature: <u>/s/ Eric C. Stops</u>

Name: <u>Eric C. Stops</u>