No. 2024-1346

# United States Court of Appeals for the Federal Circuit

CORCEPT THERAPEUTICS, INC.,

*Plaintiff-Appellant*,

*v.*

TEVA PHARMACEUTICALS USA, INC.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of New Jersey in No. 1:18-cv-03632-RMB-LDW,
Honorable Renée Marie Bumb, Chief Judge

## TEVA'S RESPONSE TO CORCEPT'S COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC

John Christopher Rozendaal
Michael E. Joffre
Uma N. Everett
William H. Milliken
Anna G. Phillips
Brady P. Gleason
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K St. NW
Washington, DC  20005
(202) 371-2600

*Counsel for Defendant-Appellee
Teva Pharmaceuticals USA, Inc.*

Dated: June 8, 2026

FORM 9. Certificate of Interest                                    Form 9 (p. 1)
                                                                   March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2024-1346 |
| **Short Case Caption** | Corcept Therapeutics, Inc. v. Teva Pharmaceuticals USA,☐ |
| **Filing Party/Entity** | Teva Pharmaceuticals USA, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/26/2024

Signature:  /s/ John Christopher Rozendaal

Name:  John Christopher Rozendaal

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Teva Pharmaceuticals USA, Inc. | | Teva Pharmaceutical Industries Ltd., |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable                    ☐   Additional pages attached

| | | |
|---|---|---|
| LIZA M. WALSH<br>WALSH PIZZI O'REILLY FALANGA LLP | CHRISTINE INTROMASSO GANNON<br>WALSH PIZZI O'REILLY FALANGA LLP | ELEONORE OFOSU-ANTWI<br>WALSH PIZZI O'REILLY FALANGA LLP |
| HECTOR DANIEL RUIZ<br>WALSH PIZZI O'REILLY FALANGA LLP | JESSICA K. FORMICHELLA<br>WALSH PIZZI O'REILLY FALANGA LLP | LAUREN RUTH MALAKOFF<br>WALSH PIZZI O'REILLY FALANGA LLP |
| WILLIAM T. WALSH , JR<br>WALSH PIZZI O'REILLY FALANGA LLP | ZAHIRE DESIREE ESTRELLA-CHAMBERS<br>KEAN UNIVERSITY | Brooke N. McLain<br>Sterne Kessler Goldstein & Fox PLLC4 |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable                    ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

BACKGROUND ...............................................................................................2

ARGUMENT .....................................................................................................5

I.     En banc rehearing is unwarranted. ..........................................................5

        A.     This case is an exceptionally poor vehicle for en banc review. ............5

        B.     There is no conflict in this Court's precedent. ....................................6

                1.     *Genentech*'s holding follows directly from Supreme Court precedent. ..................................................................................6

                2.     Corcept's proposed rule contravenes precedent from the Supreme Court and this Court. ...................................................12

                3.     Corcept's proposed rule would frustrate the purpose of the Hatch-Waxman Act and invite abuse. .....................................13

        C.     Corcept's request to replace *Glaxo* with an incoherent strict-liability regime for Orange Book-listed patents is forfeited and meritless. ...............................................................................16

II.    Panel rehearing is unwarranted...............................................................18

CONCLUSION .................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
 365 U.S. 336 (1961)................................................................................12

*AstraZeneca Pharmaceuticals LP v. Apotex Corp.*,
 669 F.3d 1370 (Fed. Cir. 2012) (cited at Pet. 8).................................10

*Bayer AG v. Elan Pharmaceutical Research Corp.*,
 212 F.3d 1241 (Fed. Cir. 2000) ...........................................................10

*Caraco Pharmaceutical Labortaries, Ltd. v. Novo Nordisk A/S*,
 566 U.S. 399 (2012)................................................................................15

*DSU Medical Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006) (Michel, C.J., and Mayer, J.,
 concurring).................................................................................................5

*Eli Lilly & Co. v. Medtronic, Inc.*,
 496 U.S. 661 (1990)........................................................................*passim*

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
 845 F.3d 1357 (Fed. Cir. 2017) .................................................7, 9, 10

*Ferring B.V. v. Watson Laboratories, Inc.-Florida*,
 764 F.3d 1401 (Fed. Cir. 2014) ..............................................................9

*Genentech, Inc. v. Sandoz Inc.*,
 55 F.4th 1368 (Fed. Cir. 2022) .....................................................*passim*

*Glaxo, Inc. v. Novopharm, Ltd.*,
 110 F.3d 1562 (Fed. Cir. 1997) ....................................................*passim*

*Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*,
 2026 WL 1593307 (U.S. June 4, 2026).........................................6, 15

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
 572 U.S. 915 (2014)...........................................................................7, 12

*Par Pharmaceutical, Inc. v. Eagle Pharmaceuticals, Inc.*,
    44 F.4th 1379 (Fed. Cir. 2022) ...................................................................10

*Pentax Corp. v. Robison*,
    135 F.3d 760 (Fed. Cir. 1998) ...................................................................16

*Sanofi v. Watson Laboratories Inc.*,
    875 F.3d 636 (Fed. Cir. 2017) ...................................................................11

*Sunovion Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*,
    731 F.3d 1271 (Fed. Cir. 2013) .................................................................10

*Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corp.*,
    785 F.3d 625 (Fed. Cir. 2015) ...........................................................*passim*

*Vanda Pharmaceuticals Inc. v. Roxane Laboratories, Inc.*,
    203 F. Supp. 3d 412 (D. Del. 2016), *aff'd*, 887 F.3d 1117................................14

*Vanda Pharmaceuticals Inc. v. West-Ward Pharmaceuticals International Ltd.*,
    887 F.3d 1117 (Fed. Cir. 2018) ........................................................7, 9, 10, 14

**Statutes**

21 U.S.C. § 355(j)(2)(A)(v) ...........................................................................3

21 U.S.C. § 355(j)(4)(G) ...............................................................................3

**Other Authorities**

21 C.F.R. § 314.94(a)(8)(iii)-(iv).....................................................................3

21 C.F.R. § 314.127(a)(7)..............................................................................3

Federal Circuit Rule 40 .................................................................................1

**INTRODUCTION**

This is a Hatch-Waxman case involving two method-of-treatment patents that require co-administering mifepristone and a strong CYP3A inhibitor in a specific order and at specific doses. There is no record evidence that *anyone* has *ever* practiced these patents—not even the expert physician Corcept hired to make its infringement case. Not surprisingly, then, the district court found that Corcept failed to prove infringement for two reasons: Corcept did not prove (i) that Teva's product, if marketed, will be used to directly infringe; or (ii) that Teva's label induces infringement. In a unanimous non-precedential decision, the panel affirmed the first finding and did not reach the second.

That factbound decision does not warrant rehearing. *Cf.* Fed. Cir. R. 40 Practice Notes (rehearing from a non-precedential opinion "rarely appropriate"). And the legal question on which Corcept seeks review—whether consideration of evidence outside an ANDA is impermissible where the defendant's label "indisputably recommends an infringing use," Pet. 1—is not presented by this case. The district court found that Teva's label *does not recommend* infringement and in fact *warns against* it. The panel did not disturb that conclusion. This case is thus an exceptionally poor candidate for rehearing.

Corcept's legal argument lacks merit in any event. This Court's holding in *Genentech, Inc. v. Sandoz Inc.*, 55 F.4th 1368 (Fed. Cir. 2022), that the direct-

infringement inquiry in a Hatch-Waxman case requires consideration of "all the relevant evidence," including physician practice, *id.* at 1379, follows from decades of precedent. Corcept would have this Court jettison that settled approach and adopt a regime that would *categorically forbid* courts from analyzing evidence outside the label—such that a defendant whose label even mentions a patented use could be liable for infringement even if infringement will never occur and even if the defendant does not intend that result. Pet. 5. That breathtaking expansion of liability finds no support in precedent or sound policy.

## BACKGROUND

A.    Corcept's patents claim methods of treating Cushing's syndrome by co-administering mifepristone and a strong CYP3A inhibitor at specific doses and in a particular order. There is no record evidence that anyone has practiced the patents. Op. 7-9. The trial evidence showed that physicians avoid co-administration of these drugs, and for good reason: it "can cause adverse drug-drug interactions," including death. Op. 2; Appx10-11; Appx32.

When Corcept launched its mifepristone product, Korlym, in 2012, the accompanying label "warned against coadministration due to safety concerns." Op. 2-3; Appx14. The 2012 Korlym label did, however, permit co-administration of 300 mg mifepristone and strong CYP3A inhibitors. Corcept nonetheless told the

Patent Office that the 2012 label "forceful[ly]" warned against co-administration. Appx15.

After the first of Corcept's relevant patents issued, Corcept updated Korlym's label to permit co-administration of up to 900 mg mifepristone with strong CYP3A inhibitors. The revised label preserves—almost verbatim—the language that Corcept characterized as "forceful[]" warnings against co-administration. Appx15-17. And it provides updated guidance on how to dose mifepristone if the clinician decides—contrary to the label's warnings—to co-administer a strong CYP3A inhibitor. *Id.* Some of those permitted dosing regimens track the claimed methods; most do not. Appx35-37. As required by applicable FDA regulations, Teva's mifepristone label mirrors the current Korlym label. 21 U.S.C. §§ 355(j)(2)(A)(v), (j)(4)(G); 21 C.F.R. §§ 314.94(a)(8)(iii)-(iv), 314.127(a)(7).

B.    This case was tried in 2023, over a decade after Korlym's launch and nearly four years after Corcept revised Korlym's label. Both Corcept's expert and Teva's expert are endocrinologists with decades of experience treating Cushing's syndrome. Both testified that they have never co-administered mifepristone and a strong CYP3A inhibitor, let alone at the claimed doses and in the claimed order. Appx28.

The district court concluded that Corcept failed to prove direct infringement or active inducement. Appx4.

As to direct infringement, the district court found it "highly unlikely that physicians will practice the claimed methods" for several reasons. Appx31. *First*, Corcept presented no evidence of past infringement. Appx28-29, Appx36-37. *Second*, the district court, crediting Teva's expert's testimony, found that "physicians generally avoid co-administering mifepristone and strong CYP3A inhibitors" because doing so is dangerous. Appx31-32. *Third*, again crediting Teva's expert, the district court found that physicians could readily avoid co-administration due to the availability of other medications that are easier to dose. Appx33. *Fourth*, the district court found that Teva's label "cautions against co-administration," and that a clinician who decided to co-administer anyway "could follow the instructions on Teva's label and not infringe." Appx35.

As to active inducement, the district court found that "Teva's label does not encourage physicians to practice the asserted claims." Appx40-41. Again crediting Teva's expert's testimony, the district court found that "physicians would read Teva's label as a warning not to co-administer mifepristone and a strong CYP3A inhibitor." Appx43. The district court also emphasized that Teva's label "does not outline any benefits of co-administration or indicate the circumstances in which the agents should be co-administered," and, "in the unlikely event that a physician

decides to co-administer mifepristone and a strong CYP3A inhibitor, Teva's label does not provide exclusively infringing options"—meaning infringement "cannot be assumed." Appx42-44.

C.     The panel unanimously affirmed, finding no clear error in the district court's determination, based on "all the relevant" evidence, "that Corcept failed to prove that if Teva's proposed product were marketed, direct infringement would result." Op. 9 (citing *Genentech*, 55 F.4th at 1379-81). The panel did not reach active inducement. *Id.*

## ARGUMENT

### I.     En banc rehearing is unwarranted.

En banc consideration is a "rare intervention" that "should be reserved for real conflicts as well as cases of exceptional importance." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1311 (Fed. Cir. 2006) (Michel, C.J., and Mayer, J., concurring). The panel's non-precedential decision fits neither criterion.

### A.     This case is an exceptionally poor vehicle for en banc review.

Corcept asks the full Court to hold that courts are categorically precluded from considering evidence outside a defendant's ANDA if the "proposed label indisputably recommends an infringing use." Pet. 1; *id.* at 5. That argument is meritless, *infra* § B, but there is a more fundamental problem: this case does not present the issue. The district court found that "Teva's label does not encourage physicians to practice the asserted claims" but instead "warns physicians *against*

- 5 -

coadministration." Appx41-42. The panel did not disturb this holding, Op. 9,[1] and Corcept's petition does not argue that the full Court should address it. So Corcept's argument depends on a premise contrary to the district court's undisturbed (and un-petitioned-on) findings. Even if Corcept's arguments about direct infringement were accepted, the district court's undisturbed findings on specific intent would preclude judgment in favor of Corcept. It is hard to imagine a poorer vehicle for en banc review.

**B.    There is no conflict in this Court's precedent.**

Corcept identifies no conflict in this Court's precedent. And the rule Corcept proposes would create one.

### 1.    *Genentech*'s holding follows directly from Supreme Court precedent.

*Genentech* holds that a Hatch-Waxman plaintiff alleging induced infringement must prove that the ANDA product or its use will directly infringe the patent and that the direct-infringement inquiry should consider "all the relevant

---

[1] The panel's statement that the label "expressly instructs dosing with up to 900 mg of mifepristone along with a strong CYP3A inhibitor," Op. 5, does not call the district court's no-inducement finding into question. The label instructs such dosing *only if the physician decides to co-administer in the first place*—which the label expressly instructs *against*. Appx43. And merely "describing" an infringing use is insufficient for inducement. *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015); *see also Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 2026 WL 1593307, at *7 (U.S. June 4, 2026).

evidence." 55 F.4th at 1379. That holding follows inexorably from two bedrock rules of patent law.

*First*, while submission of an ANDA constitutes an "artificial" act of infringement under § 271(e)(2), *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 676 (1990), the substantive infringement analysis requires the court to determine whether the product for which approval is sought, if marketed, would infringe under the familiar standards of § 271(a), (b), and (c), *see Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1130 (Fed. Cir. 2018). *Second*, inducement liability under § 271(b) "may arise if, but only if, there is direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (cleaned up). It follows that where, as here, a Hatch-Waxman plaintiff alleges induced infringement, it must show that, "if the proposed ANDA product were marketed, it would" be used in an infringing way. *Vanda,* 887 F.3d at 1130; *accord Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1568-70 (Fed. Cir. 1997). That determination must be based on consideration of "all the relevant evidence," which may include the ANDA, *Glaxo*, 110 F.3d at 1568, and physician practice, *see Vanda*, 887 F.3d at 1129-30 (considering evidence of physician practice); *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1366 (Fed. Cir. 2017) (same).

As the above quotations illustrate, the principle that "all the relevant evidence" must be considered to adjudicate direct infringement in an ANDA case was not an innovation by the *Genentech* panel. *Glaxo* (decided in 1997) explains the rule well: the "relevant inquiry" for direct infringement in a § 271(e)(2) case "is whether … the alleged infringer will likely market an infringing product." 110 F.3d at 1570. Although the statute demands an examination of a hypothetical, the inquiry is otherwise the same as in a traditional patent lawsuit. *Id.* Therefore, *all* evidence regarding the manufacture, use, or sale of the product that will be sold is relevant because—as in any patent case—such evidence "ultimately determines whether infringement exists." *Id.* at 1569-70. So, in *Glaxo*, "the district court properly considered the ANDA itself … and other pertinent evidence" in affirming a finding of no direct infringement. *Id.*

*Takeda* is also illustrative. The patents claimed methods of co-administering two agents. 785 F.3d at 634. The ANDA label discouraged co-administration but provided guidance on how to co-administer if the physician deemed it "necessary." *Id.* The patentee argued that, because the label contemplated an infringing mode, infringement must be likely. *Id.* at 634-35. But this Court rejected that argument and affirmed the district court's finding that there was "insufficient proof of direct infringement" because physicians would try to—and could—avoid co-administration. *Id.* at 635.

- 8 -

In sum, *Genentech* was not "a single outlier case," Pet. 1; it was another chapter in a decades-old book. *Glaxo*, *Takeda*, *Eli Lilly v. Teva*, and *Vanda* all confirm that direct infringement and specific intent are distinct inquiries, and that, in addressing the former question, all relevant evidence—including physician practice—ought to be considered. *Genentech* was thus on solid ground in holding that, even though the label in that case (unlike the one here) recommended infringement, the defendant was not liable because real-world evidence demonstrated that direct infringement was unlikely.[2]

Corcept cites no case contrary to *Genentech*. Instead, it cites several decisions standing for the unremarkable proposition that, "[i]n some cases, the ANDA specification directly resolves the infringement question because it defines a proposed generic product in a manner that either meets the limitations of an asserted patent claim or is outside the scope of such a claim." *Ferring B.V. v. Watson Lab'ys, Inc.-Fla.*, 764 F.3d 1401, 1408 (Fed. Cir. 2014) (collecting cases). If the accused product, as defined in the ANDA, falls within the scope of the claims, infringement lies—even if the defendant purports to "guarantee" that it will

---

[2] Corcept's acknowledgement (at 12) that the label in *Genentech* recommended an infringing use contradicts Corcept's arguments to the panel. Corcept's merits briefing attempted to distinguish *Genentech* by falsely stating that the *Genentech* label "instructed *against* the infringing use," GBr. 14—a mischaracterization Corcept repeated at oral argument, Oral Arg. 11:05-22.

- 9 -

in fact market a non-infringing product. *See Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1279-80 (Fed. Cir. 2013). Conversely, if the product as defined by the ANDA falls *outside* the scope of the claims, infringement does not lie—even if the plaintiff claims that the defendant will market a *different* product that does infringe. *See Par Pharm., Inc. v. Eagle Pharms., Inc.*, 44 F.4th 1379, 1384 (Fed. Cir. 2022); *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1249 (Fed. Cir. 2000).

But where—as here—the patentee advances an *inducement* theory, the ANDA ordinarily does *not* conclusively answer the direct-infringement question. That is because direct infringement in such cases turns not on how the product is *defined* but instead on how it will be *used*. The ANDA label is relevant in answering that question—but so too is evidence of physician practice. That is why *Vanda*, *Eli Lilly*, and *Genentech* considered *both* the label and evidence about how physicians were likely to prescribe the drug to determine whether direct infringement would occur. *See Vanda*, 887 F.3d at 1129-30; *Eli Lilly*, 845 F.3d at 1366; *Genentech*, 55 F.4th at 1379-80. There is no conflict between that approach and the holdings of *Sunovion*, *Par*, and *Bayer*.[3]

---

[3] *AstraZeneca Pharmaceuticals LP v. Apotex Corp.*, 669 F.3d 1370 (Fed. Cir. 2012) (cited at Pet. 8) holds that seeking approval for a use not claimed in an asserted patent is not infringement under § 271(e)(2). *Id.* at 1379-80. It has no

Of course, in cases where the drug has one FDA-approved indication and the asserted patent claims that indication, the label may *effectively* resolve the infringement inquiry. *See, e.g.*, *Sanofi v. Watson Lab'ys Inc.*, 875 F.3d 636, 645 (Fed. Cir. 2017). But that is not because the presence of direct infringement is irrelevant in such cases, or because courts are somehow forbidden from looking outside the label to determine whether direct infringement is likely. It is because of the common-sense reality that drugs tend to be prescribed according to their FDA-approved indications. So it is no heavy burden for a patentee to prove a likelihood of direct infringement if administering the drug for its only indication infringes.

But those were not the facts in *Genentech*, where the evidence showed that physicians prescribing the drug according to its FDA-approved indication could and would avoid infringement. 55 F.4th at 1380. And they are not the facts here. Corcept's patents cover specific methods of co-administering mifepristone with another category of drugs—methods the label describes but specifically discourages, Appx35, and that physicians can and do avoid infringing, Appx28-29. The panel correctly affirmed the district court's conclusion that, on those facts, direct infringement had not been proven.

---

relevance to whether a direct-infringement analysis in a Hatch-Waxman case may consider evidence outside the ANDA.

### 2. Corcept's proposed rule contravenes precedent from the Supreme Court and this Court.

Corcept asks the en banc Court to rule that an ANDA applicant whose proposed label "describes a patent-protected method," Pet. 5-6, is strictly liable under § 271(e)(2)—regardless of whether infringement has happened or ever will happen. This rule would *categorically forbid* courts from analyzing evidence outside the label. And it would—in Corcept's own words—"collapse" the induced-infringement question "into one inquiry focused exclusively on" the label, without regard to any other evidence. BBr. 46.

Corcept does not cite any case that endorses such an approach. Quite the contrary; Corcept's proposal defies precedent in at least three ways. Corcept's attempt to decouple § 271(e)(2) infringement from the traditional § 271(a), (b), and (c) inquiries contravenes *Eli Lilly*'s and *Glaxo*'s teachings that § 271(e)(2) provides merely an "artificial" act of infringement, *Eli Lilly*, 496 U.S. at 676, meaning the "inquiry … under § 271(e)(2) is the same as it is in any other infringement suit." *Glaxo*, 110 F.3d at 1568-69. Corcept's attempt to conflate inducement with the required underlying act of direct infringement contravenes the Supreme Court's repeated admonitions that "inducement liability may arise 'if, but only if, there is direct infringement.'" *Limelight*, 572 U.S. at 921 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961)) (alterations omitted); *see Takeda*, 785 F.3d at 635 (not reaching inducement because "there

- 12 -

was insufficient proof of direct infringement"). And Corcept's attempt to impose liability for merely "describing a patent-protected method," Pet. 5, contravenes black-letter precedent that inducement requires more than that. *See Takeda*, 785 F.3d at 631.

Corcept's rule thus would not resolve any conflict of authority—it would create one (and violate Supreme Court precedent). The Court should decline this invitation to rewrite the law.

### 3. Corcept's proposed rule would frustrate the purpose of the Hatch-Waxman Act and invite abuse.

The lack of legal authority for Corcept's position is reason enough to reject it. But the rule would be exceedingly bad policy as well. It would dramatically curtail the availability of generic drugs.

This very case illustrates that risk. Corcept's rule would categorically preclude the court from even *considering* evidence of physician practice and instead require Teva to wait a decade to market mifepristone—all because of a patent that will never be infringed. If this strategy is permitted to succeed, patents directed to obscure methods of administration that bear any relationship—however tenuous—with the label would become a barrier to access to lower-cost medicines. Generic filers will then be forced to *disprove* infringement of those patents, all while categorically forbidden from marshalling the very evidence (i.e., how physicians actually use the drug) necessary to do so. That would upend the balance

- 13 -

Congress struck in the Hatch-Waxman Act and lead to fewer generics and higher drug prices.

Corcept's contrary arguments (at 16-17) are meritless. *First*, Corcept's claim that it is "difficult for brand manufacturers to adduce evidence of actual infringement" is resolved by *Vanda*'s rule that Hatch-Waxman plaintiffs need not prove past infringement, 887 F.3d at 1129-30.[4] If infringement were as inevitable as Corcept claims, proving *future* infringement should not have been difficult here. It was not too difficult for the patentee in *Vanda*, which adduced "patient records and testimony confirm[ing] that" the steps of the claimed method had been and would be practiced. *Vanda Pharms. Inc. v. Roxane Lab'ys, Inc.*, 203 F. Supp. 3d 412, 433 (D. Del. 2016), *aff'd*, 887 F.3d 1117. That Corcept failed to adduce similar evidence is a telling indication that future infringement is unlikely.

*Second*, Corcept's suggestion (at 16) that *Genentech* incentivizes branded companies to wait to sue until a generic comes on the market and "better evidence emerges" is absurd. The *branded* product is on the market before generic entry, so evidence about its use is readily available. And the Hatch-Waxman Act gives branded companies ample incentives to file suit early: a statutory 30-month stay

---

[4] It also ignores that Teva, like the generics in *Genentech* and *Takeda*, adduced its own evidence that clinicians following the label are *not* likely to infringe. Appx31-33; *Takeda*, 785 F.3d at 634-35; *Genentech*, 55 F.4th at 1380.

- 14 -

precluding generic entry and a potential automatic injunction under § 271(e)(4), all without having to prove past direct infringement or satisfy the traditional requirements for injunctive relief. The notion that branded companies would give up these advantages and allow generic entry (and the resulting change in market dynamics) before suing because proving infringement is otherwise just too hard is nonsense.

*Third*, Corcept's arguments about section viii carve-outs (at 16-17) fail. Corcept's attempt to use the lack of a carve-out as evidence of inducement "turns the legal test on its head. [Corcept] needs to show that [Teva] took affirmative steps to induce, not affirmative steps to make sure others avoid infringement." *Takeda*, 785 F.3d at 632 n.4.

Corcept's argument also ignores that no carve-out was available here. *Cf. Hikma*, 2026 WL 1593307, at *7 (identifying the "duty of sameness" in explaining why the generic label could not omit certain clinical study information). Generics' ability to carve out label language is limited by the "use code" the brand submits when listing a patent in the Orange Book. *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 406-07 (2012). FDA "will not approve" a proposed carve-out if it "overlaps at all with the brand's use code." *Id.* at 406. Here, the use

code Corcept submitted for both patents is "Treating Cushing's Syndrome."[5] That overbroad use code left Teva with no procedural route to carve out the drug-drug interaction (DDI) information. Had Teva carved out references to "treating Cushing's syndrome," nothing would be left. And, even if Corcept had not improperly manipulated the use-code regime, FDA generally does not permit carve-outs of drug-drug interaction information like the material at issue here.[6]

### C.    Corcept's request to replace *Glaxo* with an incoherent strict-liability regime for Orange Book-listed patents is forfeited and meritless.

Corcept's petition goes even further and argues that the mere submission of an ANDA with a Paragraph IV certification against an Orange Book-listed patent ends the infringement inquiry. Pet. 13-15. This, Corcept acknowledges, would require overruling *Glaxo*'s holding that the mere "filing of the ANDA" does not suffice to prove infringement under § 271(e)(2). 110 F.3d at 1567-70.

Corcept forfeited this argument by failing to raise it to the panel. *Pentax Corp. v. Robison*, 135 F.3d 760, 762 (Fed. Cir. 1998). Furthermore, Corcept offers no valid basis for reconsidering *Glaxo*. That case's holding follows directly from *Eli Lilly*, *see Glaxo*, 110 F.3d at 1567-70, and makes logical sense. To determine

---

[5] https://www.accessdata.fda.gov/scripts/cder/ob/patent_info.cfm?Product_No=001&Appl_No=202107&Appl_type=N.

[6] *See, e.g.*, Dkt. No. FDA-2016-P-2672-0019 (Jan. 17, 2017), *available at* https://www.regulations.gov/document/FDA-2016-P-2672-0019.

whether an ANDA seeks approval "for a drug claimed in a patent or the use of which is claimed in a patent," one must do an infringement analysis. Although that analysis focuses on what *will* happen if the product is marketed, rather than what *has* happened, *Eli Lilly*, 496 U.S. at 676, 678, the only available standards for infringement are those in other subsections of § 271 (e.g., (a), (b), and (c)). Hence *Glaxo*'s holding that the infringement analysis under § 271(e) "is the same as it is in any other infringement suit." *Id.* at 1568-69.

This rule also accords with § 271(e)(2)'s purpose: to create a cause of action for patent infringement that otherwise would not exist due to the § 271(e)(1) safe harbor. *Id.* Section 271(e)(2) does not define a substantive act of patent infringement that differs from infringement under § 271(a), (b), and (c). It merely creates a jurisdictional hook so courts can resolve the substantive infringement question (by reference to traditional patent-infringement standards) before an ANDA product is marketed. *Glaxo*, 110 F.3d at 1567-70 (analyzing § 271(e)(2)(A)'s text and legislative history).

Corcept would have the Court jettison this common-sense approach and replace it with an incoherent regime in which branded companies can establish infringement *merely by listing a patent in the Orange Book*: Any ANDA filer wishing to market its product before such a patent expires would have to file a Paragraph IV certification with their ANDA, and that would be infringement,

- 17 -

period—regardless of whether the proposed ANDA product or its contemplated use falls within the scope of the claims. That approach would radically upend the balance struck by the Hatch-Waxman Act—a statute designed to "make available more low cost generic drugs." *Glaxo*, 110 F.3d at 1568. Indeed, it would effectively immunize branded companies from generic competition altogether.

## II.    Panel rehearing is unwarranted

Corcept's only argument for panel rehearing is that *Genentech* conflicts with precedent. That is incorrect for the reasons explained above. Panel rehearing is unwarranted.

## CONCLUSION

The Court should deny Corcept's petition.

Dated: June 8, 2026

Respectfully submitted,

*/s/ John Christopher Rozendaal*

John Christopher Rozendaal
Michael E. Joffre
Uma N. Everett
William H. Milliken
Anna G. Phillips
Brady P. Gleason
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K St. NW
Washington, DC  20005
(202) 371-2600

*Counsel for Defendant-Appellee*
*Teva Pharmaceuticals USA, Inc.*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1346

**Short Case Caption:** Corcept Therapeutics, Inc. v. Teva Pharmaceuticals USA, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes __3,900__ words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __06/08/2026__

Signature: /s/ John Christopher Rozendaal

Name: John Christopher Rozendaal

Save for Filing